## BORG et al. v. INTERNATIONAL SILVER CO.

(District Court, S. D. New York. May 15, 1924.)

Injunction ⚖➡136(2)—Issuance of common stock and its sale chiefly to preferred stockholders temporarily enjoined at suit of common stockholders.

Issuance by the directors of a corporation of a stated amount of common stock, and its sale on a pro rata basis to holders of its common and preferred stock at 50 per cent. of its par value, temporarily restrained at suit of common stockholders, where the corporation had a substantial surplus, in which common stockholders only were entitled to share, the amount of preferred stock outstanding was more than six times that of the common stock, and the effect of such distribution would be to give the preferred stockholders much the greater part of the new issue.

In Equity. Suit by Sidney C. Borg and Myron I. Borg, partners as Simon Borg & Co., suing on behalf of themselves and all other holders of its common stock, against the International Silver Company. On motion for preliminary injunction. Granted.

Cook, Nathan & Lehman, of New York City (Walter C. Noyes, Alfred A. Cook, and F. F. Greenman, all of New York City, of counsel), for plaintiffs.

Simpson, Thacher & Bartlett, of New York City (Graham Sumner, of New York City, of counsel), for defendant.

WINSLOW, District Judge. This is a motion for a preliminary injunction restraining the defendants from issuing shares of its common stock, of the par value of $100 each, to the record holders of its preferred and common stock, at $50 a share, in the proportion of one share for every ten held. The defendant contemplates issuing to such stockholders, common and preferred, sufficient stock to raise approximately $300,-000. Three other persons have asked permission to intervene as a committee under an agreement known as a stockholders' protective agreement, and have joined in the motion.

Under the offer made by the defendant, each holder of preferred and common stock will be entitled to one share of new stock for every ten shares of old. Exclusive of treasury stock, there are now issued 60,285 shares of preferred and 9,353 shares of common stock. The propriety of the issuance of 2,500 shares of this common stock is, however, questioned by the plaintiffs. The proposal of the defendant is contained in a circular letter, dated December 26, 1923, copy of which is attached to the bill herein. The stock thus offered to the stockholders of record is now held in defendant's treasury.

The plan provides either payment in full on or before February 1, 1924, or, at subscribers' option, in installments, the last of which installments will fall due November 1, 1924. The circular further states that the money thus raised is needed for new buildings, machinery, and equipment.

The effect of issuing this common treasury stock would give the major portion thereof to the preferred stockholders. The temporary restraining order was issued pending the hearing and determination of the motion for the preliminary injunction. On the motion, the plaintiffs and the intervening stockholders represented 3,994 shares of common stock. The proposed action of the directors is challenged on the following grounds:

(1) The common stock proposed to be issued has in equity the status of retired stock, and cannot be issued at less than par.

(2) If it be held to have the status of treasury stock, then, as a matter of equity, the shares can be issued only upon such condition as will give to the holders of the common stock the first right to take the full amount at the price offered, and any amount which they do not take may contemporaneously be sold to the holders of preferred stock or to strangers.

(3) The sale of the stock is sought to be made in any event at an inadequate price. The burden is upon the directors to establish the adequacy of the price, as well as that the offer is made in good faith, because the directors are contracting with the corporation.

(4) The action is not taken in good faith because the dominant intent of the directors is to obtain common stock for the preferred stockholders, not $300,000 for the corporation.

The preferred stock of the defendant corporation is limited to 7 per cent. cumulative dividends and the payment of par in the event of dissolution and distribution. All earnings and surplus after the satisfaction of the claims of the preferred stockholders inure to the benefit of the common stock. The common stock which has a par value of $100, it is contended, has a book value of $480 a share. Whether or not this be true, it is conceded that the defendant corporation has a substantial actual surplus. In order to entitle the plaintiffs to the preliminary injunction, it is evident that they must show a case of probable right, or, in any event, that the balance of convenience justifies the issuance of such restraining order in order to maintain the status quo. It is manifest that the issuance of additional common stock

at 50 cents on the dollar will materially decrease the surplus available to the common stock, and enable the preferred stockholders under the offer to acquire the major portion of the stock sought to be issued. The stock to be issued and now in its treasury was acquired by the defendant corporation through the purchase of the stock of the United States Silver Corporation in 1903, which corporation was the owner of this stock. The United States Silver Corporation was dissolved in 1908, the stock in question passed to the defendant. The defendant contends that this stock has not been retired or canceled as provided by the laws of the state of New Jersey, under which the corporation was organized. Therefore it is contended that the stock thus previously issued and now held by it in the treasury may be resold for the benefit of the defendant corporation.

It does not appear to be necessary on this motion to decide the precise question as to whether or not this stock was canceled by its reacquisition, but assuming that it was not, the directors in selling it are acting in a fiduciary capacity. The majority of the directors of the defendant corporation who voted for the proposal under discussion, were all holders of substantial amounts of preferred stock, but held no common stock. It is manifest that these directors cannot take any action which would injure one class of stock, even if no benefit were conferred upon the other class. If it be true—and it appears not to be disputed—that the corporation has a substantial surplus to which the preferred stockholders would not be entitled in the event of dissolution, then the action of the directors in making an offer which results in the preferred stockholders getting the major portion of the proposed issue at 50 per cent. of its par value, would seem to work an injustice to the common stockholders. Whatever the intent of the directors may have been, the result is to confer specific benefits upon the preferred stockholders to the detriment of the common stockholders.

It is argued that no one has offered to pay more for it, and that there is no agreement as to what its market price, if any, may be. Indeed, it is asserted that 50 per cent. of its par is all it is worth; but apparently no effort has been made to get the par value of the stock, nor, indeed, to ask the common stockholders what they would be willing to pay. The price fixed would seem to be arbitrary. The burden is on the directors to prove that the price is adequate. Geddes v. Anaconda Copper Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 425.

The inquiry naturally suggests itself to the inquiring mind whether or not the dominant motive is to distribute common stock to the holders of preferred stock, rather than merely to obtain $300,000 for the corporation. The parties all admit that without any difficulty whatever the corporation, with its financial standing, could readily borrow $300,000 on easy and convenient terms if its needs so require. It may be conceded, however, that no attack is made upon the sincerity of the directors' motives and their integrity, but such integrity of purpose in no wise changes the result of the issuance of the stock. The only detriment to the defendant resulting from the issuance of a preliminary injunction would be that, if resort is had to borrowing the money needed, interest would necessarily be paid. The denial of the injunction would, on the other hand, change the relation of the parties and might result in irreparable injury. The granting of the injunction will inflict upon the defendant only relative and small inconvenience.

The comparative injury would be greater to the plaintiff if refused than to the defendant if granted. Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060. The issuance of the stock will largely increase the outstanding common stock, and the book value at least of the shares held by the plaintiffs and those similarly situated would be materially reduced. The questions as to the status of the stock sought to be issued, whether canceled or held for cancellation, and whether or not the price is wholly inadequate as the plaintiffs contend, may be reserved until the trial of the cause.

For the reasons stated, I think the preliminary injunction should issue in accordance with the prayer; the plaintiffs, however, to give a bond in an amount to be fixed on the settlement of the order. The amount of this bond must be sufficient to protect the rights and interests of those affected thereby.